WEINBERG ZAREH MALKIN PRICE LLP
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
Phone: 212-899-5470
Adrienne Woods, Esq.
Omid Zareh, Esq.
Email: awoods@wzmplaw.com
Email: ozareh@wzmplaw.com

*Proposed Attorneys for Acorn Real Property
Acquisition, Inc., Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ACORN REAL PROPERTY ACQUISITION, INC.,<br><br>                              Debtor. | Chapter 11<br><br>Case No. 22-42718<br><br>Hon. Jil Mazer-Marino |

**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a)**

Acorn Real Property Acquisition, Inc. (the "Debtor"), by and through its proposed counsel Weinberg Zareh Malkin Price LLP, as and for its motion for approval of the settlement agreement (the "Settlement") with Legacy Lending LLC ("Lender") (the "Motion"), respectfully represents:

**PRELIMINARY STATEMENT**

1.  This Motion seeks entry of an order approving the Settlement between the Debtor and the Lender resolving all disputes between them pertaining to the Property (as defined herein). Approval of this Settlement will result in satisfaction of the Lender's secured claim, the taxing authority's priority claim and a carve out that will benefit the Debtor's estate. It will also provide a period of time during which the Debtor will have an exclusive right to purchase the property located 3751 Martin Luther King Jr., Blvd. SW, Atlanta, GA (the "Property") and recoup some of

its investment. As set forth herein, the Settlement readily meets the requisite standard and the Debtor respectfully requests that it be approved by the Court.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Settlement Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

3. On October 31, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code §§ 101 *et seq*. (the "Bankruptcy Code") in the Bankruptcy Court for the Eastern District of New York (the "Court").

4. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. Throughout this case, 2 Big Legacy LLC ("2 Big") has asserted an equity interest in the Property. Both the Debtor and the Lender dispute these claims. It is not disputed that 2 Big has no judicially approved or otherwise legally enforceable fee simple interest in the Property. 2 Big also has asserted no evidence to support any valid or enforceable ownership interest in the Property. On or about December 6, 2022, the Debtor initiated Adversary Proceeding No. 22-01098 against 2 Big by filing a complaint seeking declaratory judgments that certain transfers of the Property for no consideration made by 2 Big to itself were cancelled and avoided under both Georgia law and the Bankruptcy Code (the "Adversary Proceeding"). A trial is scheduled in the Adversary Proceeding on September 6, 2023.

6. On January 20, 2023, the Debtor filed its *Disclosure Statement* [ECF Docket No. 44] (the "Disclosure Statement") and *Plan of Reorganization* [ECF Docket No. 45] (the "Plan").

The Plan and Disclosure Statement contemplated a sale of the Property with proceeds being used to satisfy the Lender's secured claim in the amount of $12,587,218.80 in full. *See, e.g.,* Disclosure Statement at §§ VI.B and VI.D; Plan at §§ 3.2.2, 2.1, 4.3.

7. On June 5, 2023, the Debtor's prior counsel moved to withdraw as counsel. [ECF Docket 85] (the "Withdrawal Motion").

8. The Debtor has been unable to make adequate protection payments during the pendency of this case. As a result, on March 23, 2023, the Lender filed its *Motion for Entry of an Order Compelling Debtor to Provide Adequate Protection Pursuant to 11 U.S.C. § 361* [ECF Docket No. 60] (the "Adequate Protection Motion") requesting entry of an order compelling the Debtor to provide the Lender with adequate protection in the form of monthly interest payments.

9. On April 18, 2023, the Debtor filed its *Motion for Entry of an Order Approving Bid Procedures for Sale of the Real Property Located at 3751 Martin Luther King Jr. Drive SW, Atlanta, Georgia* [ECF Docket No. 70] (the "Bidding Procedures Motion"). Pursuant to the Bidding Procedures Motion, in the event there were no interested bidders for the Property, Lender would have an opportunity to credit bid for the Property.

10. On May 16, 2023 [ECF Docket No. 74] (the "Bidding Procedures Order"), the Court granted the Bidding Procedures' Motion.

11. Paragraph 6 of the Bidding Procedures' Order provides that the Lender is entitled to "credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of section 363(k) of the Bankruptcy Code, and the Secured Creditor [*i.e.*, Lender] shall therefore be considered a Qualifying Bidder and such Credit Bid shall be considered a Qualifying Bid." Paragraph 14 of the Bidding Procedures Order further provides that, in the event no bids were submitted, the Lender shall be deemed to be the "Successful Bidder."

12. In connection with the Bidding Procedures Motion, on May 12, 2023, the Debtor filed the *Motion Seeking an Order Pursuant to 11 U.S.C. §§ 105(A), 363, 503 and 507 Authorizing the Sale, Outside of the Ordinary Course of Business, of the Debtor's Real Property Located at 3751 Martin Luther King Jr. Drive SW, Atlanta, Georgia Free and Clear of Liens, Claims, Rights, Encumbrances and Interests With All Liens Attaching to the Proceeds of the Sale and Other Related Relief* [ECF Docket No. 73] (the "Sale Motion"). In the Sale Motion, the Debtor acknowledged that "[t]he only qualified bid received by the Debtor was the Credit Bid from Lender…." *See* Sale Motion at ¶ 12.

13. As part of its credit bid, the Lender agreed to pay a carve-out of $65,000 to the Debtor's estate as well as the prepetition real estate taxes associated with the Property totaling approximately $95,000.

14. At the hearing to consider the Sale Motion on June 7, 2023, the Debtor withdrew the Sale Motion.

15. On June 13, 2023, the Court entered an Order [ECF Docket No. 91] granting the Adequate Protection Motion and, *inter alia*, directing the Debtor to make certain adequate protection payments to the Lender in prescribed amounts.

16. To date, no adequate protection has been paid, and accordingly on June 20, 2023, the Lender filed the *Motion of Legacy Lending LLC for Entry of an Order Directing the Appointment of a Chapter 11 Trustee or, in the Alternative, Converting the Case to a Case Under Chapter 7 of the Bankruptcy Code* [ECF Docket No. 96] (the "Conversion Motion").

17. A hearing was held on the Conversion Motion on July 12, 2023 (the "July 12 Hearing").[1] At the July 12 Hearing, the Debtor appeared with its new proposed counsel, Weinberg

---

[1] The Withdrawal Motion remains pending.

4

Zareh Malkin Price LLP ("WZMP"). Prior to the hearing, WZMP reached out to the Lender's counsel and attempted to negotiate a resolution of the various issues between the Debtor and the Lender (together, the "Parties"). At the July 12 hearing, the Lender indicated that it was open to a settlement involving certain parameters, specifically including that the Sale Motion be renewed and scheduled for hearing, and that the Lender be permitted to credit bid its secured claim. The Debtor and 2 Big both agreed to the basic structure of the settlement terms proposed. Accordingly, the Court adjourned the Conversion Motion until July 26 to allow the parties time to negotiate specific terms.

18. On July 26, 2023, the Parties appeared before the Court on the adjourned Conversion Motion and were able to report that a settlement had been reached between the Debtor and the Lender and outlined the material terms on the record. 2 Big declined to participate in the Settlement.

**COMPROMISE AND SETTLEMENT AGREEMENT**

19. The Parties mutually desire to resolve any and all disputes between them relating to the Property. As such, the Debtor seeks approval of the Settlement, a copy of which is annexed hereto as Exhibit A, pursuant to this Motion.

20. The key terms of the Settlement are as follows:[2]

a. **Acknowledgement of Payoff Amount**. The Parties agree and acknowledge that the Payoff Amount (as defined in the Settlement) is immediately due and owing Lender and that fees, costs, default interest and other charges have and will continue to accrue during the Forbearance Period\.

b. **Sale Motion**. Substantially simultaneous with the filing of this Motion, the Debtor shall refile and notice the Sale Motion (the "Renewed Sale Motion") for hearing with the Bankruptcy Court. The Renewed Sale Motion shall seek entry of a proposed order, in substantially the same form as previously submitted under the Sale Motion (the "Sale Order"), approving the sale of the Property to Lender (the "363 Sale"). The Sale Order shall be deemed final upon the fulfillment of all of the following conditions: (a) the Sale

---

[2] Capitalized terms not defined in this section are ascribed the meaning provided in Exhibit A hereto.

Order is identical to the proposed order that was reviewed and approved by Lender, or otherwise approved by Lender, (b) the Sale Order authorizes and approves the 363 Sale of the Property to Lender, and (c) the Sale Order becomes final, meaning that the period for appeal or other challenge has expired either without any such appeal or challenge having been filed, or if any such appeal or challenge has been filed, upon the final resolution of such challenge or appeal (the "<u>Final Sale Order</u>"). Upon entry of the Final Sale Order, Lender will be entitled to record a deed in its name evidencing its full and complete ownership interest in and to the Property (the "<u>363 Deed</u>").

c. **<u>Discounted Payoff</u>**. Following entry of the Final Sale Order and consummation of the 363 Sale, and provided no Termination Event (as defined in the Settlement) occurs, the Lender shall hold the Property and not sell, transfer or otherwise dispose of the Property from the date thereof until September 30, 2023 (the "<u>Forbearance Period</u>"), to permit the Debtor to payoff Lender and/or purchase the Property at the following discounts:

| Date of Purchase or Refinancing | Price |
|---|---|
| On or before August 1, 2023 | $13,150,000 plus reimbursement of the Real Estate Tax Payment[3] |
| August 2, 2023—August 15, 2023 | $13,300,000 plus reimbursement of the Real Estate Tax Payment |
| August 16, 2023—August 31, 2023 | $13,500,000 plus reimbursement of the Real Estate Tax Payment |
| September 1, 2023—September 15, 2023 | $13,750,000 plus reimbursement of the Real Estate Tax Payment |
| On or after September 15, 2023 | Full amount of the Loan then-outstanding plus reimbursement of the Real Estate Tax Payment |

As long as the Forbearance Period has not expired or a Termination Event has not occurred, the Debtor shall have the first right of refusal to purchase the Property pursuant to the foregoing terms. For the avoidance of doubt, to the extent the Debtor does not payoff Lender or purchase the Property on or before September 30, 2023, or upon the occurrence of a Termination Event, Lender shall be permitted to sell, transfer or otherwise dispose of the Property in its sole and absolute discretion. Notwithstanding the foregoing, the Lender will grant a short period, not to exceed five (5) business days following September 30, 2023 (e.g., October 6, 2023), after the Forbearance Period for the Debtor (and Debtor, only) to close; provided, however, that the Debtor is ready, willing and able to close, but unforeseen circumstances beyond the Debtor's control necessitate this brief extension of time to close.

---

[3] Real Estate Tax Payment shall mean reimbursement of all pre-petition 2022 real property taxes for the calendar year 2022 paid by Lender as part of the Sale Order for the Property (*i.e.*, tax parcels 14F-0015-0004-032-7 (account number 1672759) and 14F-0015-0004-047-5 (account number 5999505)), in the approximate amount of $93,488.94, together with any updated interest and penalties due and owing up to the 363 Sale closing date. The Parties agree and acknowledge that as part of this Agreement, the Debtor shall be responsible for payment of any 2023 and subsequent property taxes that may be due and owing on account of the Property.

In addition to the reimbursement of the Real Estate Tax Payment to be paid by Lender as part of the closing of the 363 Sale, the Debtor shall also reimburse Lender for any water/sewer bills that were paid by Lender as part of the 363 Sale and for any water/sewer bills that are paid by Lender after the 363 Sale closing date through the reimbursement date of the payment made by the Debtor pursuant to this Section. In addition to the foregoing, to the extent Lender pays any sum to satisfy the Materialmens' Lien filed by Powel Construction, LLC, such payment shall be reimbursed by the Debtor as part of any reimbursement obligation required by this Section.

d. **Release of All Claims By Debtor**. For the sole consideration of the promises and covenants in the Settlement, the Debtor, on behalf of itself, its bankruptcy estate and all parties claiming by, through or under it, including its agents, employees, representatives, officers, attorneys, advisors, shareholders, directors, principals, partners, managers, members, successors, assigns, parents, subsidiaries, affiliates, equity holders, trustees, beneficiaries, and predecessors in interest of each of the foregoing (collectively, the "Debtor Parties") hereby waives, releases, and forever discharges Lender and all parties claiming by, through or under it, including its agents, employees, representatives, officers, attorneys, advisors, shareholders, directors, principals, partners, managers, members, successors, assigns, parents, subsidiaries, affiliates, equity holders, trustees, beneficiaries, and predecessors in interest of each of the foregoing (collectively, the "Lender Parties") from any and all claims, demands, damages, causes of action, or suits of any kind or nature whatsoever, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that the Debtor Parties have or may have against the Lender Parties, including, but not limited to, any claims, demands, damages, causes of action, interests (reversionary or otherwise) or suits of any kind or nature whatsoever, known or unknown, arising out of or in any way relating to the Loan, the Property, the Loan Documents, or the Bankruptcy Case; *provided*, *however*, that the releases set forth in this paragraph shall not apply to the obligations expressly contained in the Settlement.

e. **Adversary Proceeding**. Debtor covenants and agrees to diligently prosecute and otherwise pursue its claims against 2 Big in the Adversary Proceeding and obtain an order from the Bankruptcy Court in the Adversary Proceeding finding that the Invalid Deeds are invalid and unenforceable as a matter of law (the "Adversary Proceeding Order"), which Adversary Proceeding Order shall be entered within thirty (30) calendar days of the date of the Settlement.

f. **Bankruptcy Court Approval**. The Settlement is subject to approval of the Bankruptcy Court.

g. **Disposition of the Trustee Motion**. The Trustee Motion (as defined in the Settlement) shall be held in abeyance pending the Debtor's performance and satisfaction of the terms of this Settlement based on Lender's sole and absolute discretion. Upon satisfaction of all terms of the Settlement, the Trustee Motion shall be deemed withdrawn and Lender shall file any necessary pleadings in the Bankruptcy Case to effectuate the same; provided, however, that to the extent a Termination Event occurs or any Party otherwise fails to observe any term, covenant, representation, warranty or other obligation under this

Agreement, Lender shall be permitted to re-notice the Trustee Motion for consideration with the Bankruptcy Court at the next-available hearing date.

h. **Dismissal of Bankruptcy Case**. Following the later of: (a) fourteen (14) calendar days from entry of the Final Sale Order and Final 9019 Order; or (b) fourteen (14) calendar days from recordation of the 363 Deed, and upon satisfaction of all other terms and conditions of the Settlement, the Bankruptcy Case shall be dismissed, and the Parties will consent and agree to such dismissal.

## ARGUMENT

21. In considering whether to approve a settlement agreement pursuant to Rule 9019 of the Bankruptcy Rules, bankruptcy courts must evaluate fairness, equity, and the best interest of the estate. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994).

22. A court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length, and degree of complexity of the litigation, the potential difficulties of collecting on a judgment, "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer Ferry*, 390 U.S. at 424–25.

23. To constitute a fair and equitable compromise or settlement, a court must find that the settlement does not "fall below the lowest level of reasonableness," giving consideration to the interest of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. *Cossoff v. Rodman (In re W.T. Grant Co)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758–59 (Bankr. S.D.N.Y. 1992); *In re Del Grosso*, 106 B.R. 165, 167–68 (Bankr. N.D. 1989) (*citation omitted*).

24. The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure

that the settlement reaches the threshold of reasonableness. Instead, a Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests of the estate, and otherwise does not fall outside the range of reasonableness. *In re Apex Oil Co.*, 92 B.R. 847, 866–67 (Bankr. E.D. Mo. 1988).

25. In *In re Adelphia Communications Corp.*, 327 B.R. 143, 159–60 (Bankr. S.D.N.Y. 2005), Judge Gerber identified the list of factors outlined in *In re Texaco Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988) as the applicable standard to consider approval of a settlement (the "*Texaco* Factors"). The *Texaco* Factors include:

(i) the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis a vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures;

(ii) the prospect of complex and protracted litigation if the settlement is not approved;

(iii) the proportion of the class members who do not object or who affirmatively support the proposed settlement;

(iv) the competency and experience of counsel who support the settlement;

(v) the relative benefits to be received by individuals or groups within the class;

(vi) the nature and breadth of releases to be obtained by the directors and officers as a result of the settlement; and

(vii) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.

*See Texaco*, 84 B.R. at 902.

26. In the present case, the Debtor believes that the Settlement should be approved because it will discontinue any further litigation between the Parties relating to the Property, which would necessarily lead to the depletion of estate assets. The Settlement will also satisfy the largest claim against the estate, that of the Lender. Further, the Lender has offered valuable consideration

by consenting to contribute $65,000 to the estate as well as to satisfy approximately $95,000 in unpaid prepetition real estate taxes.[4] Finally, the Lender has provided the Debtor a reasonable period of time in which it may repurchase the Property from the Lender at a discount. As a result, the Debtor believes that the Settlement provides considerable value for the estate.

27. Absent the Settlement, it is very likely that litigation will continue. The result would undoubtedly be appointment of a Chapter 11 trustee or conversion of the case to Chapter 7, either of which would diminish the recovery available for creditors.

28. The Settlement was reached by arms-length bargaining between the Parties. Both sides were represented by competent counsel who fairly and vigorously represented each Party's best interests.

29. The Settlement provides the best possible outcome for all Parties, and indeed for the estate as a whole. Moreover, creditors of the estate will benefit from this Court's approval of the Settlement which will end the dispute between the Parties regarding the Property in the most efficient and cost-effective manner. The proposed Settlement is the product of an arms-length negotiation, and no undue pressure or duress was applied by either Party. Finally, the Settlement provides significant benefits to the Debtor and its estate as set forth above, and therefore should be approved.

## **NOTICE**

30. Copies of this Motion have been served upon: (a) the Office of the United States Trustee; (b) all creditors; and (c) all parties who filed a request for notice in this case. The Debtor submits that notice of the Motion in this manner is sufficient and proper and that no further notice is necessary.

---

[4] If the Debtor repurchases the Property from the Lender, they will need to repay this; however, it is uncertain at this time whether it will find satisfactory funding to do so.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion, enter the stipulation and order approving the Settlement pursuant to Bankruptcy Rule 9019(a) and grant such other, further, and different relief as is just and proper.

Dated: New York, New York
July 28, 2023

WEINBERG ZAREH MALKIN PRICE LLP

By: */s/ Adrienne Woods*
    Adrienne Woods, Esq.
    Omid Zareh, Esq.

45 Rockefeller Plaza, 20th Floor
New York, New York 10111
Phone: 212-899-5470
Email: awoods@wzmplaw.com
Email: ozareh@wzmplaw.com

*Proposed Attorneys for Acorn Real Property Acquisition, Inc., Debtor and Debtor-in-Possession*