EXHIBIT A

SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is dated July __, 2023 and entered into by and among Acorn Real Property Acquisition, Inc. ("Debtor") and Legacy Lending, LLC ("Lender," and together with Debtor, the "Parties," and each, a "Party").

## RECITALS

A. On October 31, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), designated case number 22-42718 (the "Chapter 11 Case").

B. Prior to the Petition Date, on or about June 1, 2022, Lender extended a loan to 2 Big Legacy LLC ("2 Big") in the original principal amount of $11,900,000.00 (the "Loan").

C. The Loan is secured by that certain Deed to Secure Debt, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, dated June 1, 2022 (the "Deed of Trust," and together with any documents executed in connection therewith or relating thereto, the "Loan Documents"), given by 2 Big in favor of Lender, encumbering certain real property located at 3751 Martin Luther King Jr. Drive SW, Atlanta, Georgia (the "Property"). Lender recorded the Deed of Trust on June 14, 2022 in Book 65814 at Page 320 in the records of Fulton County Georgia. By virtue of the foregoing, Lender holds a perfected security interest in and to the Property as collateral for indebtedness owed to Lender which, as June 29, 2023, totaled $13,889,792.42 exclusive of attorneys' fees and costs (the "Payoff Amount").

D. 2 Big, without Lender's consent, conveyed the Property to the Debtor pursuant to a Quitclaim Deed dated July 1, 2022, and recorded July 14, 2022, in Book 65927 at Page 237 in the records of Fulton County, Georgia.

E. On September 9, 2022, 2 Big executed an unauthorized Quitclaim Deed allegedly conveying a 50% interest in the Property back to 2 Big (the "First Invalid Deed") with the Office of the Clerk of Fulton County Georgia. Thereafter, on October 31, 2022, 2 Big executed a second unauthorized Quitclaim Deed again allegedly conveying a 50% interest in the Property to 2 Big and other parties, including, Christopher Flournoy (collectively, the "Second Invalid Deed," and together with the First Invalid Deed, the "Invalid Deeds") with the Office of the Clerk of Fulton County Georgia. Notwithstanding the Invalid Deeds, the Debtor is the current legal owner of the Property.

F. On or about December 6, 2022, the Debtor initiated Adversary Proceeding No. 22-01098 against 2 Big by filing a complaint seeking, *inter alia*, a declaratory judgment that the Invalid Deeds were unenforceable and avoidable under both Georgia law and the Bankruptcy Code (the "Adversary Proceeding"). The Adversary Proceeding remains pending.

G. On May 12, 2023, the Debtor filed the *Motion Seeking An Order Pursuant To 11 U.S.C. §§ 105(A), 363, 503 And 507 Authorizing The Sale, Outside Of The Ordinary Course Of Business, Of The Debtor's Real Property Located At 3751 Martin Luther King Jr. Drive SW,*

*Atlanta, Georgia Free And Clear Of Liens, Claims, Rights, Encumbrances And Interests With All Liens Attaching To The Proceeds Of The Sale And Other Related Relief* [Docket No. 73] (the "Sale Motion") in the Bankruptcy Case.  At the June 29, 2023 hearing before the Bankruptcy Court, the Debtor unilaterally withdrew the Sale Motion from consideration by the Bankruptcy Court.

H. On June 20, 2023, Lender filed the *Motion For Entry Of An Order Directing The Appointment Of A Chapter 11 Trustee Or, In The Alternative, Converting The Case To A Case Under Chapter 7 Of The Bankruptcy Code* [Docket No. 96; corrected at Docket No. 101] (the "Trustee Motion") in the Bankruptcy Case.

I. At the hearing on the Trustee Motion, the Parties agreed that they would attempt to resolve the matter and, as such, the hearing on the Trustee Motion was adjourned to facilitate further negotiations between the Parties.

J. In an effort to avoid unnecessary and protracted litigation and to achieve an amicable resolution of the issues between the Parties, the Parties have agreed to the settlement memorialized in this Agreement, subject, however, to Bankruptcy Court approval thereof.

**NOW, THEREFORE**, with the foregoing background deemed incorporated herein and hereinafter, and in consideration for the mutual covenants and promises contained herein, the sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound hereby, acknowledge and agree as follows:

## AGREEMENT

1. **Acknowledgement of Payoff Amount**.  By executing this Agreement, the Debtor agrees and acknowledges that the Payoff Amount is immediately due and owing Lender and that fees, costs, default interest and other charges have and will continue to accrue during the Forbearance Period (as defined herein).

2. **Sale Motion**.  The Debtor covenants and agrees that, simultaneously with the filing of the 9019 Motion (as defined herein), Debtor shall re-file and serve the Sale Motion (the "Renewed Sale Motion") for consideration with the Bankruptcy Court.  The Renewed Sale Motion shall seek entry of a proposed order , in substantially the same form as previously submitted under the Sale Motion (the "Sale Order"), approving the sale of the Property to Lender (the "363 Sale") The Sale Order shall be deemed final upon the fulfillment of all of the following conditions: (a) the Sale Order is identical to the proposed order that was reviewed and approved by Lender, or otherwise approved by Lender, (b) the Sale Order authorizes and approves the 363 Sale of the Property to Lender, and (c) the Sale Order becomes final, meaning that the period for appeal or other challenge has expired either without any such appeal or challenge having been filed, or if any such appeal or challenge has been filed, upon the final resolution of such challenge or appeal (the "Final Sale Order").  Upon entry of the Final Sale Order, Lender will be entitled to record a deed in its name evidencing its full and complete ownership interest in and to the Property (the "363 Deed").

3. **Discounted Payoff**.  Lender agrees that, following entry of the Final Sale Order and consummation of the 363 Sale, and provided no Termination Event (as defined herein) occurs,

Lender shall hold the Property and not sell, transfer or otherwise dispose of the Property from the date hereof until September 30, 2023 (the "Forbearance Period"), to permit the Debtor to payoff Lender and/or purchase the Property at the following discounts:

| Date of Purchase or Refinancing | Price |
|---|---|
| On or before August 1, 2023 | $13,150,000 plus reimbursement of the Real Estate Tax Payment[1] |
| August 2, 2023—August 15, 2023 | $13,300,000 plus reimbursement of the Real Estate Tax Payment |
| August 16, 2023—August 31, 2023 | $13,500,000 plus reimbursement of the Real Estate Tax Payment |
| September 1, 2023—September 15, 2023 | $13,750,000 plus reimbursement of the Real Estate Tax Payment |
| On or after September 15, 2023 | Full amount of the Loan then-outstanding plus reimbursement of the Real Estate Tax Payment |

As long as the Forbearance Period has not expired or a Termination Event has not occurred, the Debtor shall have the first right of refusal to purchase the Property pursuant to the foregoing terms. For the avoidance of doubt, to the extent the Debtor does not payoff Lender or purchase the Property on or before September 30, 2023, or upon the occurrence of a Termination Event, Lender shall be permitted to sell, transfer or otherwise dispose of the Property in its sole and absolute discretion. Notwithstanding the foregoing, the Lender will grant a short period, not to exceed five (5) business days following September 30, 2023 (e.g., October 6, 2023), after the Forbearance Period for the Debtor (and Debtor, only) to close; provided, however, that the Debtor is ready, willing and able to close, but unforeseen circumstances beyond the Debtor's control necessitate this brief extension of time to close. In addition to the reimbursement of the Real Estate Tax Payment paid by Lender as part of the closing of the 363 Sale, the Debtor shall also reimburse Lender for any water/sewer bills that were paid by Lender as part of the 363 Sale and for any water/sewer bills that are paid by Lender after the 363 Sale closing date through the reimbursement date of the payment made by the Debtor pursuant to this Section. In addition to the foregoing, to the extent Lender pays any sum to satisfy the Materialmens' Lien filed by Powel Construction, LLC, such payment shall be reimbursed by the Debtor as part of any reimbursement obligation required by this Section 3.

---

[1] Real Estate Tax Payment shall mean reimbursement of all pre-petition 2022 real property taxes for the calendar year 2022 paid by Lender as part of the Sale Order for the Property (*i.e.*, tax parcels 14F-0015-0004-032-7 (account number 1672759) and 14F-0015-0004-047-5 (account number 5999505)), in the approximate amount of $93,488.94, together with any updated interest and penalties due and owing up to the 363 Sale closing date. The Parties agree and acknowledge that as part of this Agreement, the Debtor shall be responsible for payment of any 2023 and subsequent property taxes that may be due and owing on account of the Property

4. **Release of All Claims By Debtor**. For the sole consideration of the promises and covenants in this Agreement, the Debtor, on behalf of itself, its bankruptcy estate and all parties claiming by, through or under it, including its agents, employees, representatives, officers, attorneys, advisors, shareholders, directors, principals, partners, managers, members, successors, assigns, parents, subsidiaries, affiliates, equity holders, trustees, beneficiaries, and predecessors in interest of each of the foregoing (collectively, the "Debtor Parties") hereby waives, releases, and forever discharges Lender and all parties claiming by, through or under it, including its agents, employees, representatives, officers, attorneys, advisors, shareholders, directors, principals, partners, managers, members, successors, assigns, parents, subsidiaries, affiliates, equity holders, trustees, beneficiaries, and predecessors in interest of each of the foregoing (collectively, the "Lender Parties") from any and all claims, demands, damages, causes of action, or suits of any kind or nature whatsoever, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which exist or may exist, that the Debtor Parties have or may have against the Lender Parties, including, but not limited to, any claims, demands, damages, causes of action, interests (reversionary or otherwise) or suits of any kind or nature whatsoever, known or unknown, arising out of or in any way relating to the Loan, the Property, the Loan Documents, or the Bankruptcy Case; *provided*, *however*, that the releases set forth in this paragraph shall not apply to the obligations expressly contained in this Agreement.

5. **Covenant Not to Sue**. The Debtor Parties, on behalf of themselves and all parties claiming by, through or under them, jointly and severally covenant and agree not to commence or prosecute any action, arbitration or proceeding against Lender Parties arising out of or relating to the matters released hereby. Additionally, the Lender Parties, on behalf of themselves and all parties claiming by, through or under them, jointly and severally covenant and agree not to commence or prosecute any action, arbitration or proceeding against the Debtor Parties arising out of or relating to the matters released hereby. For the avoidance of doubt, each Party reserves their right to commence or prosecute an action to enforce the terms of this Agreement.

6. **Reserved**.

7. **Bankruptcy Court Approval**.

    a. 9019 Motion. The Debtor shall file and serve a motion seeking approval of this Agreement in the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion") and a proposed Order granting the relief sought in the 9019 Motion (the "Proposed 9019 Order"). The 9019 Motion and Proposed 9019 Order shall be subject to review and final approval by Lender in all respects. The Debtor shall reasonably cooperate with Lender in responding to or defending against any challenges or objections to the 9019 Motion.

    b. The 9019 Order. The Proposed 9019 Order as entered by the Bankruptcy Court (the "9019 Order") shall, *inter alia*: (i) be in form and substance acceptable to Lender; (ii) approve this Agreement in full and authorize and direct the Debtor, to enter into this Agreement and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of this Agreement; (iii) to the extent necessary, authorize Lender to enter into and take any and all actions necessary and appropriate to consummate and perform the terms and conditions of this Agreement; and

(iv) restate and specifically approve the releases set forth herein. The Approval Order shall be deemed final upon the fulfillment of all of the following conditions: (a) the 9019 Order is identical to the Proposed 9019 Order that was reviewed and approved by Lender, or otherwise approved by Lender, (b) the 9019 Order approves this Agreement without change, and (c) the 9019 Order becomes final, meaning that the period for appeal or other challenge has expired either without any such appeal or challenge having been filed, or if any such appeal or challenge has been filed, upon the final resolution of such challenge or appeal (the "Final 9019 Order").

8. **Adversary Proceeding Order**. Debtor covenants and agrees to diligently prosecute and otherwise pursue its claims against 2 Big in the Adversary Proceeding and obtain an order from the Bankruptcy Court in the Adversary Proceeding finding that the Invalid Deeds are invalid and unenforceable as a matter of law (the "Adversary Proceeding Order"), which Adversary Proceeding Order shall be entered within thirty (30) calendar days of the date of this Agreement.

9. **Disposition of the Trustee Motion**. The Trustee Motion shall be held in abeyance pending the Parties' performance and satisfaction of the terms of this Agreement based on Lender's sole and absolute discretion. Upon satisfaction of all terms of this Agreement, the Trustee Motion shall be deemed withdrawn and Lender shall file any necessary pleadings in the Bankruptcy Case to effectuate the same; provided, however, that to the extent a Termination Event occurs or any Party otherwise fails to observe any term, covenant, representation, warranty or other obligation under this Agreement, Lender shall be permitted to re-notice the Trustee Motion for consideration with the Bankruptcy Court at the next-available hearing date.

10. **Agreement Effective Date**. This Agreement shall become effective upon satisfaction of the following conditions precedent (with all documents to be in form and substance satisfactory to Lender and Lender's counsel) as determined by Lender (the "Agreement Effective Date"):

    a. Lender shall have receive counterparts hereof signed by the Debtor, duly executed and in full force and effect;

    b. The Bankruptcy Court's entry of the Final 9019 Order;

    c. The Bankruptcy Court entry of the Final Sale Order;

    d. The Bankruptcy Court's entry of the Adversary Proceeding Order; and

    e. Lender shall have received such other documents and agreements that Lender shall reasonably require.

11. **Dismissal of Bankruptcy Case**. Following the later of: (a) fourteen (14) calendar days from entry of the Final Sale Order and Final 9019 Order; or (b) fourteen (14) calendar days from recordation of the 363 Deed, and upon satisfaction of all other terms and conditions of this Agreement, the Bankruptcy Case shall be dismissed, and the Parties hereby consent and agree to such dismissal.

12. **Termination Events**. Each of the following shall constitute a termination event ("**Termination Event**") resulting in the termination of this Agreement and entitling Lender immediately, without any further notice to Debtor, to exercise all of its right and remedies under this Agreement, the Loan Documents, in equity and at law, to the extent permitted by applicable law, including, but not limited to, filing a certification of such Termination Event with the Bankruptcy Court and pursuing the adjudication of the Trustee Motion for the appointment of a trustee in the Bankruptcy Case:

   a. If Debtor fails to file the Renewed Sale Motion or otherwise fails to diligently pursue entry of the Final Sale Order;

   b. the breach by Debtor of any covenant or obligation under this Agreement;

   c. if Debtor shall file or institute against any of Lender Parties any lawsuit, complaint, administrative claim, adversary proceeding or other legal action, directly or indirectly, relating to the Loan, the Loan Documents, the Property or the Bankruptcy Case;

   d. the Debtor fails to (i) diligently prosecute the Adversary Proceeding and/or (ii) obtain the Adversary Proceeding Order within thirty (30) calendar days of the date of this Agreement; or

   e. if any representation or warranty of Debtor in this Agreement shall be untrue or inaccurate in any material respect.

Upon a Termination Event, Borrower Parties agree not to delay, oppose, enjoin, hinder or otherwise disrupt Lender's exercise of its rights and remedies under this Agreement and the Loan Documents. Debtor shall fully cooperate with Lender in connection with efforts to pursue the Trustee Motion and effect the appointment of a trustee upon the occurrence of a Termination Event. For the avoidance of doubt, upon a Termination Event, Debtor hereby irrevocably consents to the entry of an order appointing a trustee in the Bankruptcy Case and agrees to execute any and all additional documents necessary to effectuate the immediate appointment of such trustee and not to oppose, contest, challenge or otherwise defend against the entry of the appointment of a trustee.

13. **Cooperation**. By executing this Agreement, the Parties agree and acknowledge that they shall use their best efforts to obtain entry of the Final Sale Order and Final 9019 Order, and shall take all reasonable actions and execute such other documents as may be necessary or appropriate to fully perform under the terms of this Agreement and the 363 Sale. The Lender further agrees that it will not take any action and will reasonably cooperate in the Debtor's efforts to refinance or pay off the Loan on or before September 30, 2023.

14. **No Admission**. It is understood and agreed among the Parties hereto that this is a settlement by compromise of disputed claims. Nothing in this Agreement may be construed as an admission or agreement by any of the Parties that it agrees or supports any of the alleged or asserted theories of another Party.

15. **Representations and Warranties.**

(a) Each Party represents and warrants that it has carefully read this Agreement in its entirety; that it has had an adequate opportunity to consider this Agreement and to consult with any advisor of its choice about this Agreement; that it understands all of the terms in this Agreement; that it has consulted with independent counsel of its choice, who answered to its satisfaction all questions that it had regarding this Agreement; that its undersigned representative is duly authorized to enter into this Agreement on its behalf; that it voluntarily assents to all the terms and conditions contained in this Agreement; that by signing this Agreement it is bound by the terms and conditions contained in this Agreement; and that it is signing this Agreement voluntarily and of its own free will.

(b) Each Party represents and warrants that it is the sole and exclusive owner of its respective released and waived claims, demands, damages, causes of action, or suits and that it has not assigned, transferred, or conveyed, or purported to assign, transfer, or convey, and that it will not assign, transfer, or convey any of the same to any person or entity who has not, by its signature on the signature page of this Agreement, likewise released same.

16. **Independent Examination**. The Parties each represent and warrant that they have relied upon their own independent judgment, belief, and knowledge in entering into this Agreement, that they have obtained whatever advice and consultation they deemed necessary in this matter, and that they have not been influenced to any extent whatsoever in entering into this Agreement by any representations or statements made by the Parties being released or by any person representing said Parties.

17. **Successors**. This Agreement is binding upon, and shall inure to the benefit of, the Parties, and their respective administrators, successors and assigns, including any Chapter 7 Trustee appointed in the Bankruptcy Case. However, except as expressly stated herein, nothing herein is intended to benefit any third party.

18. **Legal Counsel**. The Parties acknowledge that legal counsel has represented them. The Parties acknowledge that the form of this Agreement is the result of negotiation and cooperative drafting. As such, this Agreement shall not be strictly construed against any particular Party.

19. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and/or email signatures shall be treated in all manner and respects as a binding and original document, and the signature of any party shall be considered for these purposes as an original signature.

20. **Additional Documents**. The Parties agree to cooperate fully and execute any and all supplemental documents, if any, that are reasonably necessary, and take all additional actions that are reasonably necessary and appropriate, to give full force and effect to the basic terms and intent of this Agreement.

21. **Entire Agreement**. This document contains the entire agreement between the Parties, and the terms of this release are contractual and not a mere recital. As of the Stipulation

Effective date, the terms of this Agreement shall be binding upon the heirs, representatives, successors, and assigns of each of the Parties hereto.

22. **Jurisdiction**. Any dispute with respect to the interpretation, implementation, and enforcement of this Agreement shall be resolved by the Bankruptcy Court or such other court that has jurisdiction over the Chapter 11 Case. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ITS RIGHTS TO A JURY TRIAL FOR ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT.

23. **Controlling Law**. The Agreement shall be governed by the laws of the State of New York.

24. **No Amendment or Modification**. This Agreement may not be altered, amended, waived, modified or otherwise changed in any respect whatsoever with the sole exception of by a writing duly executed by authorized representatives of each of the Parties, and the Parties further acknowledge and agree that they will make no claim at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever. No failure on the part of any Party to this Agreement to exercise, and no delay on its part in exercising, any right or remedy under this Agreement will operate as a waiver thereof, nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy.

25. **Survival**. The representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

[*Remainder of this page intentionally left blank*]

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above.

**ACORN REAL PROPERTY ACQUISITION, INC.**

By: _____
Name: Olakunle Apampa
Title: President

**LEGACY LENDING, LLC**

By: _Rodney Dial_____
Name: Rodney Dial
Title: CEO