**DUANE MORRIS LLP**
Lawrence J. Kotler
Drew S. McGehrin (admitted *pro hac vice*)
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Fax: (215) 979-1020
Email: LJKotler@duanemorris.com
DSMcGehrin@duanemorris.com

*Counsel to Legacy Lending LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ACORN REAL PROPERTY ACQUISITION, INC., | Case No. 22-42718 (JMM) |
| Debtor. | Hon. Jil Mazer-Marino |

**REPLY OF LEGACY LENDING LLC TO POWELL CONSTRUCTION LLC'S OBJECTION TO MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES TO THE EXTENT THAT SUCH RELIEF WOULD IMPAIR POWELL'S CLAIM OF LIEN ON THE SUBJECT PROPERTY**

Legacy Lending LLC ("Lender"), by and through its undersigned counsel, hereby submits this *Reply* (the "Reply") to Powell Construction LLC's ("Powell") *Objection To Motion To Sell Property Free And Clear Of Liens, Claims And Encumbrances To The Extent That Such Relief Would Impair Powell's Claim Of Lien On The Subject Property* [Docket No. 82] (the "Objection")[1]. In support of this Reply, Lender respectfully states as follows:

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Objection.

## PRELIMINARY STATEMENT

The Objection should be overruled because the alleged lien Powell seeks to protect is invalid as a matter of law and, as such, is not entitled to priority over the perfected security interest Lender holds in and to certain real property located at 3751 Martin Luther King Jr. Drive SW, Atlanta, Georgia (the "Property").  First, to the extent Powell holds an enforceable interest based on an alleged materialman's lien (which Lender disputes), under applicable Georgia law, Lender's perfected security interest is entitled to priority as Lender's interest is based on a purchase money loan that was extended to the underlying borrower without actual notice by the Lender of Powell's inchoate lien claim.  Second, Powell, itself, has acknowledged that it is NOT a secured creditor but, rather, is a general unsecured creditor of the Debtor's estate.  As such, Powell should be judicially estopped from revisiting and raising arguments, for the first time, that it is somehow a secured creditor of the Debtor's estate.  Finally, whatever interest Powell may have at one time held with respect to the Property was formally and finally released by Powell in a prior bankruptcy proceeding involving two of the former owners of the Property.

For these reasons, each as set forth fully herein, the Objection should be overruled.

## BACKGROUND

**A.     The Bankruptcy Case**

1.     On October 31, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under of chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "Court").

2.     Upon information and belief, the Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. § 1107 and 1108.

*i.     The Powell Claims and Asserted Lien Rights*

3. On January 3, 2023, Powell filed an unsecured claim against the Debtor's estate in the amount of $1,000,000 designated as Claim No. 2 (the "Powell Proof of Claim") asserting amounts owed as a result of work, labor and materials provided by Powell on the Property. The Powell Proof of Claim contains only a spreadsheet outlining certain work allegedly planned for the Property and attaches no invoices or other documents supporting the claim.

4. The Debtor objected to the Powell Proof of Claim [Docket Nos. 42, 75] (together, the "Claim Objection").

5. Powell responded to the Claim Objection and attached a copy of a certain Claim of Lien (the "Mechanic's Lien") Powell filed in the Superior Court of Fulton County, Georgia on November 3, 2023 relating to the amounts alleged as owing by the Debtor to Powell (the "Mechanic's Lien"). *See* Docket No. 52.

6. The Mechanic's Lien asserts that "[Powell] signed a contract dated January 03, 2022 and as employed. . .under an agreement with Acorn Real Property Acquisitions [*sic.*] Inc.[.]"

7. Adjudication of the Powell Proof of Claim is still pending before this Court.

8. In addition to the Powell Proof of Claim, Powell also filed a separate proof of claim (the "Standing Ovation Claim") in the chapter 7 bankruptcy proceedings of Standing Ovation Renovations LLC ("Standing Ovation")[2] on April 5, 2022 pending before the United

---

[2] As set forth *Declaration Of Amelia Huskins In Support Of Reply Of Legacy Lending LLC To 2 Big Legacy, LLC's Objection To Debtor's Motion For Entry To Sale Property [Sic] Located At 3751 Martin Luther King Jr., Blvd. SW, Atlanta, GA* [Docket No. 80] (the "First Huskins Declaration") as well as the *Declaration Of Amelia Huskins In Support Of Motion Of Legacy Lending LLC For Entry Of An Order Directing The Appointment Of A Chapter 11 Trustee Or, In The Alternative, Converting The Case To A Case Under Chapter 7 Of The Bankruptcy Code* [Docket No. 98] (the "Second Huskins Declaration, and together with the First Huskins Declaration, the "Huskins Declarations"), Standing Ovation was a former owner of this Property prior to the commencement of this case. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the pleadings filed of record in this case, including the Huskins Declarations. *See* Fed. R. Evid. 201(b).

3

States Bankruptcy Court for the Northern District of Georgia at Case No. 22-52642-WLH. Therein, Powell alleged that Standing Ovation owed Powell approximately $760,000 for work performed on the Property prior to April 5, 2022.

9. Powell thereafter filed a Withdrawal of the Standing Ovation Claim (the "Standing Ovation Claim Withdrawal") stating that the claim was "paid in full." *See, e.g.*, Docket No. 47 in Case No. 22-52645-WLH

10. In addition, as part of the Standing Ovation Claim Withdrawal, Powell executed a General Release dated May 23, 2022 in favor of Standing Ovation as well as in favor of Alvarez Investement [*sic*] Group, LLC, also a prior owner of the Property (the "General Release") in consideration for Powell's receipt of $700,000.

11. Pursuant to the General Release, all claims for amounts owing on account of work performed by Powell for Standing Ovation and another prior owner in the chain of title, Alvarez Investement Group, LLC[3], were released. A true and correct copy of the Standing Ovation Claim Withdrawal is attached hereto as **Exhibit A**.

    *ii.*    ***The Proposed Sale of the Property and the Objection***

12. On May 12, 2023, the Debtor filed the *Motion Seeking An Order Pursuant To 11 U.S.C. §§ 105(A), 363, 503 And 507 Authorizing The Sale, Outside Of The Ordinary Course Of Business, Of The Debtor's Real Property Located At 3751 Martin Luther King Jr. Drive SW, Atlanta, Georgia Free And Clear Of Liens, Claims, Rights, Encumbrances And Interests With All Liens Attaching To The Proceeds Of The Sale And Other Related Relief* [Docket No. 73] (the "Sale Motion") seeking approval of, *inter alia,* the sale of the Property (the "Sale"). In the Sale

---

[3]Alvarez Investment Group, LLC also a former owner of the Property prior to the commencement of this case. *See* First Huskins Declaration at ¶ 7(b).

Motion the Debtor states that "[t]he only qualified bid received by the Debtor was the Credit Bid from Lender…." *See* Sale Motion at ¶ 12.

13. Notably, as part of its credit bid, Lender agreed to pay a carve-out of $65,000 to the Debtor's estate as well as pay pre-petition real estate taxes associated with the Property that total approximately $95,000.

14. On June 5, 2023, Powell filed the Objection. In the objection, after devoting substantial argument in defense of the Powell Proof of Claim, Powell argues that its alleged lien rights it asserts against the Property arising from the Mechanic's Lien must be preserved notwithstanding the proposed Sale.

15. At the hearing to consider the Sale on June 7, 2023, however, the Debtor, through its principal, after allegedly terminating its counsel and despite the significant benefits such a Sale would provide its estate, adjourned approval of the Sale to a date and time to be determined[4].

16. Thereafter, following settlement negotiations between Lender and the Debtor, on July 28, 2023, the Debtor filed a second bidding procedures motion (the "Renewed Bidding Procedures Motion") seeking a sale of the Property on substantially the same terms as were set forth in the Sale Motion, including with respect to Lender's Credit Bid, and a hearing on the Sale Motion is now set for September 20, 2023.

**B.     The Purchase Money Loan and Inspection of the Property**

17. Prior to the Petition Date, on or about June 1, 2022, Lender extended a loan to 2 Big Legacy LLC ("2 Big") in the original principal amount of $11,900,000.00 (the "Loan") for

---

[4] Ultimately, the Debtor's principal (as the Debtor was not represented by counsel) orally withdrew the Motion in open court.

purposes of purchasing the Property. The Loan is secured by that certain Deed to Secure Debt, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, dated June 1, 2022 (the "Security Deed," and together with each document relating thereto (the "Loan Documents")[5], given by 2 Big in favor of Lender, encumbering the Property.

18. The closing attorney, on behalf of the Lender, recorded the Security Deed on June 14, 2022 in Book 65814 at Page 320 in the records of Fulton County Georgia. A true and correct copy of the Security Deed was attached as Exhibit A to Lender's *Motion To Confirm Absence Of Stay And For In Rem Relief From Automatic Stay* [Docket No. 14] previously filed with this Court. On account of the above-referenced documents and related appropriate filings, Lender holds a properly-perfected purchase money security interest and a secured claim against Debtor.

19. As part of the diligence and review in preparing to extend the Loan, prior to the closing of the Loan, Lender sent an inspector, Mr. Dane Fitch of Riverbend Lending, a broker working with Lender in connection with the Loan, to tour and inspect the Property. During that inspection, Mr. Fitch concluded that the units were fully completed and there was no construction still ongoing or otherwise evident.

20. This conclusion was confirmed in writing by Mr. Fitch to Lender dated May 4, 2022 wherein Mr. Fitch, based upon his personal inspection, advised the Lender that "[w]ork was being completed and in an accelerated time frame, to be completed by April, the [prior]

---

[5] By way of additional context and history of the Loan, following Lender's recording of the Security Deed, on July 1, 2022, 2 Big failed to remit its monthly payment of $118,900.83 to the Lender (the "Event of Default"). In preparing to foreclose upon the Property as a result of the Event of Default, Lender discovered that 2 Big, without Lender's consent, conveyed the Property to the Debtor pursuant to a Quitclaim Deed dated July 1, 2022 and recorded July 14, 2022 in Book 65927 at Page 237 in the records of Fulton County, Georgia. The Debtor confirmed its ownership of the Property in its Schedule A/B, scheduling a fee simple ownership interest in the Property. *See* Docket No. 8, Schedule A/B at Part 9. The Debtor reconfirmed its ownership of the Property in the *Disclosure Statement* [Docket No. 44] (the "Disclosure Statement") and *Plan of Reorganization* [Docket No. 45] (the "Plan") as well. *See, e.g.,* Disclosure Statement at §§ V; Plan at § 4.1.

lender stopped releasing the rehab money and held back $900,000.00. The seller completed the rehab with his own funds. Property is 100% completed." A true and correct copy of the email from Mr. Fitch is attached hereto as **Exhibit B**. Mr. Fitch has attested to the truthfulness of these statements pursuant to the *Affidavit of Consultant Regarding No Notice of Pending Construction*, attached hereto as **Exhibit C** (the "Inspector Affidavit").

21. Lender otherwise was not informed of and had no notice of any pending or incomplete construction or related work on the Property prior to the closing of the Loan. *See Affidavit of Lender Regarding No Notice of Pending Construction* attached hereto as **Exhibit D** (the "Lender Affidavit").

## REPLY

I. **Lender Is A Purchase Money Lender Without Notice of Prior Liens And Its Perfected Security Interest Is Therefore Entitled To Priority.**

22. Under applicable Georgia law, the location of the Property, a prior-perfected purchase money security interest recorded holds priority over a materialman's lien unless the lender has actual notice of the materialman's claim of lien or inchoate lien. *See, e.g., Murray v. Chulak,* 250 Ga. 765 (Ga. 1983); *Oglethorpe Savings and Trust Co. v. Morgan,* 149 Ga. 787 (Ga. 1919); *see also Bailey v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-00273; 2018 U.S. Dist. LEXIS 220636 (N.D. Ga., July 30, 2018) ("Here, because the Deed was recorded first, it takes priority over any later recorded lien…therefore, Plaintiff's Lien does not extinguish Defendants' right to the foreclose under the . . . prior recorded Deed." (internal citations and quotations omitted); *Ga. Primary Bank v. Atlanta Paving, Inc.* 309 Ga. App. 851, 854 (Ga. Ct. App. June 10, 2011) ("[t]he holder of a security deed takes subject to any claim for materials supplied, of which he has notice, before his security deed is recorded.") (citing *Gamble v. Pilcher,* 242 Ga. 556, 557-58 (Ga. 1978)); *Caldwell v. N.W. Atlanta Bank*, 194 Ga. 370 (Ga. 1942) ("the instant

equitable action by materialmen against… the purchaser at a foreclosure sale under that deed… failed to show any actual notice to the defendant holders under the security deed as to the furnishing of materials by the plaintiffs at the time the security deed was executed, or during the time before it was recorded, and it appearing that at the time the security deed was executed and recorded the materialmen's claims of lien remained unrecorded, the priority of the holders under the security deed was properly sustained.").

23. ."Actual notice is such notice that is positively proved to have been given to [lender] directly and personally, or such as [lender] is presumed to have received personally, because the evidenced within [lender's] knowledge was sufficient to put [lender] on inquiry." *Murray v. Chulak,* 250 Ga. at 770 (citation omitted).

24. Here, the Loan was extended by Lender for the sole purpose of financing the purchase of the Property and therefore is properly considered a purchase-money loan.

25. Lender expended reasonable efforts to conduct the necessary diligence in extending such a loan, including sending a representative to the Property to inspect the premises, state of the buildings and any other improvements thereon and confirm that the Property was in an adequate state such that Lender should proceed with extending the Loan.

26. Pursuant to those efforts, Lender was informed (i) that as of the date of the Loan closing, no materialman's liens had been filed against the Property and, more importantly, (ii) that no construction was pending at the Property and there were no unpaid amounts for any prior construction following its physical inspection of the Property. *See* Lender Affidavit and Inspector Affidavit (confirming same).

27. Based on the foregoing facts and despite Lender's efforts, Lender had no actual notice that Powell or any other party claimed any interest in or lien on the Property for alleged incomplete or unpaid work or materials.

28. Because Lender extended a purchase money loan without actual knowledge of any asserted claim or interest by Powell, Lender's security interest granted through the Security Deed is superior to any alleged or asserted interest by Powell under Georgia law.

29. Therefore, the Powell objection should be overruled on this basis.

**II. Powell Has Represented Itself As An Unsecured Creditor And Therefore Should Be Judicially Estopped From Asserting A Priming Interest In The Property.**

30. Even if Powell's lien had priority over Lender's security deed (which it does not), Powell, itself, has represented to this Court and to all creditors and parties in interest that it is holding only an unsecured claim against the Debtor's estate in the Powell Proof of Claim. Powell therefore should be judicially estopped from attempting to reposition itself as a secured creditor of the Debtor's estate.

31. "The equitable doctrine of judicial estoppel provides that, '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [it] may not thereafter, simply because [its] interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by [it].'" *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

32. In order to invoke this doctrine, a party must establish that "(1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir. 1999). In other words, the "very

purpose of judicial estoppel is to prevent a party from taking such inconsistent positions merely because that party's interests have changed." *ACC Bondholders Group v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.)*, 367 B.R. 84, 93 (S.D.N.Y. 2007).

33. The Supreme Court has recognized that there are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001); *see also In re 300 Wash. St. LLC*, 528 B.R. 534, 546 (Bankr. E.D.N.Y. 2015) (noting same). Therefore, a "prior proceeding" could be an earlier matter in the same proceeding or a matter in a prior case. *In re 300 Wash. St. LLC*, 528 B.R. at 546 (citing *Republic of Ecuador v. Chevron Corp*, 638 F.3d 384, 395-96 (2d Cir. 2011). Further, "[a]doption can include adjudication by the court or reliance by another party, the court, or both." *Id*

34. In this case, both elements of judicial estoppel are easily satisfied. First, there is no question that Powell previously represented itself as an unsecured creditor. The Powell Proof of Claim, prepared by and executed by a representative of Powell itself clearly acknowledges that Powell holds an unsecured claim. Second, Powell submitted its claim and position as an unsecured creditor in the Powell Proof of Claim, has accordingly represented to this Court and to all creditors and parties in interest that it is holding only an unsecured claim against the Debtor's estate, and set forth that position under penalty of perjury. Lender and this Court should be able to rely upon these representations.

35. Powell cannot be permitted to "have it both ways" and materially modify its position at this point in the case and its Objection therefore should be overruled on this basis.

36. Notwithstanding the foregoing, the basis upon which Powell asserts a security interest is materially flawed. The Mechanic's Lien is allegedly based on the fact that "[Powell] signed a contract dated January 03, 2022 and was employed. . .under an agreement with Acorn Real Property Acquisitions [*sic.*] Inc.[.]" This agreement, however, is (i) not with the Debtor but instead with a prior owner of the Property, Edgar Nelson Inc., and (ii) is not executed by Edgar Nelson Inc. or any representative thereof. Furthermore, the date of the unsigned contract predates the Debtor's acquisition of the Property.

37. Therefore, Powell holds, at best, an unsecured claim against the Debtor's estate and not any secured interest in the Property that should be addressed or that otherwise should have any effect on, the proposed Sale of the Property.

### III. Powell Has Already Released Any Claims Against The Property.

38. Even if Powell, at one time, held any interest in the Property, Powell has already released any such claim by virtue of the payment it received and General Release it previously executed.

39. As noted above, Powell expressly represented that it was "paid in full" on account of work it provided on the Property as a result of the $700,000 payment it previously received. *See* Standing Ovation Claim Withdrawal. Further, pursuant to the General Release on which the Standing Ovation Claim Withdrawal was based, Powell expressly released all claims it may have or may have had for amounts owing on account of work performed by Powell for Standing Ovation and Alvarez Investement Group, LLC.

40. Powell should not be permitted to revive such claims that already were released and potentially adversely affect the pending Sale in this case.

41. For these reasons, the Objection should be overruled.

## RESERVATION OF RIGHTS

42. Lender expressly reserves and preserves all rights and remedies available to it under the Security Deed and applicable law, as well as its right to assert additional replies to the Objection.

## CONCLUSION

**WHEREFORE**, Lender respectfully requests that this Court overrule Powell's Objection and grant Lender such other and further relief as this Court deems just and proper.

Dated: September 15, 2023 **DUANE MORRIS LLP**

<div style="margin-left: 50%;">

*/s/ Lawrence J. Kotler*
Lawrence J. Kotler
Drew S. McGehrin (admitted *pro hac vice*)
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Fax: (215) 979-1020
Email: LJKotler@duanemorris.com
DSMcGehrin@duanemorris.com

*Counsel to Legacy Lending LLC*

</div>